Okay, Mr. Estrada, we will hear from you first. Thank you, Judge Jolly, and may it please the Court. The fundamental question in this case is whether FERC must go to federal district court when it seeks monetary penalties, often in the hundreds of millions of dollars, for violations of the Natural Gas Act. Can I ask a question? Yes, Your Honor. You know, we've been there, sort of, once before on ETP, in this Energy Transfer Courtroom. The last, second-last sentence here, the proper construction of the Natural Gas Act must await resolution when and if the Commission determines that the Natural Gas Act has been violated and assesses a penalty. Why is that not the most difficult problem you face? Let me explain that, because I think it has to do with the question of rightness, as it applies to actions under Section 19 of the Natural Gas Act. And so that we understand the procedural context of ETP, what ETP was doing was a variant of the arguments we have, but it went about doing it in a very different way. ETP received an interlocutory order of the Commission, and instead of seeking a declaratory judgment in district court, which is the court that we say has exclusive jurisdiction, came to this court under Section 19B of the Natural Gas Act. Section 19B is only available to review orders of the Commission when they are final. And in the context of interlocutory appeals of non-final agency orders, even if the agency is otherwise engaged in some adjudication that is not allowed, the rule in the context of Section 19 is that the review must await the end of the case. It is because of considerations of rightness that have to do with the administrative process itself. And it seems to me that the fundamental difference is, and this is why even the district court in this case did not believe that ETP was an apt case for the government here, is that in that case, they were using an appellate mechanism that could not come into being until the case was over. That is not what we did here. It is to be sure what the government thinks we should do, which, going to the merits of the case, really gets to the meat of the so-called Thunder Basin question. Now, the district court believed that this is a so-called Thunder Basin problem. And in our view, Thunder Basin and its progeny have nothing to do with this case. In order to understand why, I think it is important to ask what Thunder Basin and Elgin and cases that apply this framework are about. In Thunder Basin, we have the Mine Act, and in Elgin, the Merit System Protections Act. There is absolutely no doubt whatsoever that the statute expressly and textually gives the authority to adjudicate to the agency. And there is absolutely no doubt whatsoever that the same statute expressly gives the only route to federal court to the Court of Appeals. What cases like that do is you have somebody coming in and saying, although we have a very specific statute that applies to us and very expressly says the agency has to decide, we would like to use the General Federal Jurisdiction Statute, 28 U.S.C. Section 1331, because we believe we would like to have our constitutional claims adjudicated outside of that process. And we don't believe that Congress intended for our precious constitutional claims to go through the agency process. Now the nature of that problem is very different from the problem that we bring you, because in those cases of so-called channeling, it is abundantly clear what the channel is. In this statute, our contention is that since 1938, Congress has had two provisions in the statute, both of which purport to give exclusive jurisdiction to a federal court over something. And the fight in this case, unlike ETP, which involved only one of these channels, or the Thunder Basin cases that involved the general question statute, the issue in this case is simply one of statutory construction. And the recognition that Congress, since 1938, said violations go exclusively to federal district court and orders go to the Court of Appeals. Now under the commission's view, so long as they slap the title order on something, 24 will never come into being except as a mechanism for collecting money. That is actually wrong on the basis of the Manning case from the Supreme Court, which very clearly said that Section 24 must be construed parallel, excuse me, to Section 27 of the Exchange Act that were passed at the same time, the language is identical. And we know from everyday practice that the Securities and Exchange Commission sues in federal court under Section 27. The identical language is not merely a collection statute. We have a different view of the statute. We don't have a view that Section 24 completely eats Section 19. We think that there is an appropriate role for each of these sections on the basis of the contemplation of the 1938 Congress. And the appropriate division is as follows. If the agency is trying to do something that it believes goes to a court of appeals, it has to point to a part of the statute that has an active verb that allows them to adjudicate, to find, to determine, to impose, or to do something of that nature. And in that event, it appears very textually obvious in the other parts of the statute, Section 4, Section 7, and other orders that we call regulatory, that the underlying position to take the action in question and channels those matters, because they're expressly authorized for the commission to act, to the court of appeals under Section 19. In cases where there is no delegation of adjudication, determination, finding, and possession to the commission, and the commission is seeking a criminal penalty or a monetary penalty or an injunction, it seems very clear to us that those cases get channeled to the federal district courts under Section 24. And why is that? In this situation, there's a, what, a show cause order, it says? They're proposing this fine and asking for a response. So we're still in the process of them deciding if your client should be fined and how that fine should be. Now, I think in all practicality, they don't intend to go to district court, but do we Now you're in the stages of them making a determination as to what type of fine there should be and then going to district court. So are we premature in getting here because we don't know yet, given the history and the procedure, that they still are not at the stage where they could go to district court? If I could take a stab at it this way, Your Honor. In ordinary cases involving the Declaratory Judgment Act, there is a party that goes into court in anticipation of a lawsuit that could be or is threatened to be brought against him later. So say, for example, I have a maritime contract for the shipping of widgets, and it says that all of the disputes will be solved by a court in Hong Kong. The other side sends me a letter saying, actually, I have a dispute with you and I'm going to very unfriendly to folks like you. I run into federal district court on diversity and ask for a declaration that the correct forum is Hong Kong. It seems to me that that is a classic, good, textual application of the Declaratory Judgment Act. And it's very analogous to what we're doing here. Once you understand that although the commission would like you to believe that we're asking you to review their order, we're asking for a declaration of the correct forum for the procedure of the process that you actually just described. The commission has undoubtedly, and we don't question, power to investigate and to bring charges. And what this case is about is once they get to the point where they say we intend to bring charges in an in-house court, and we don't think that's authorized, that is the same as sending me the letter telling me I'm going to sue you in Greene County, Alabama, even though the contract says Hong Kong. And at that point where the investigation has concluded and they are in fact filing charges, in effect filing the coercive litigation that the DGA Action anticipates, the question of forum is ripe for decision. And you don't have to take my word on this, and I think you know that the fact that this comes up in an administrative process is incidental to the Declaratory Judgment Act process and to the ripeness test. In this context, when we are not reviewing anything, we're not asking you to say that they shouldn't be bringing charges. We say come on, but come to the right forum. Come to Hong Kong, not to Greene County, Alabama. Our point is they're authorized to act as a prosecutor, but only the federal court can adjudicate, and that's where when they made their intention clear to proceed in a forum that we believe is unlawful, that is why we went to the federal district court. Now, that raises a question of ripeness, to be sure, but it's a different question of ripeness than the question that was at issue in ET Partners, which has to do with finality and considerations that go with review of orders, which is not what we're doing. And the complete answer to the ripeness point is given by the Supreme Court's decision in Stott-Nielsen, which the government tries very bravely to hide in a footnote. And if you recall what was at issue in Stott-Nielsen was an arbitration, and the arbitration was just starting. Everybody conceded there had to be an arbitration, but the issue was is there going to be a class arbitration rather than individual arbitration? Now, if you took the view of the district court in this case or the view of the hypothetical that you just outlined, you could conceivably say let's see how it turns out. Maybe we don't have to decide whether this should be class or individual because only if you lose would that question be truly ripe in that sense. The Supreme Court swatted the challenge based on ripeness to the back of the hand, saying look, it's very different to have to undergo an unlawful process and have to incur the additional expense. That is an injury that is occurring now, and therefore there is ripeness enough to decide the correct form, class arbitration or individual arbitration, even though these questions may go away. And it seems to me that that question is completely controlling on the correct ripeness test here, which is the Declaratory Judgment Act's Article III ripeness question, which is what this case calls for the correct application of. If I could just say one other point, which I think also goes to the ripeness point, and it is ask you to look at footnote 7 of the Supreme Court's mid-immune case, because what was at issue there was a variant of the argument that the government made and that the district court adopted. And I will just read you a sentence from the late Justice Scalia's opinion. It says, the dissent asserts that the declaratory judgment proceeding cannot be used to obtain advanced rulings on matters that would be addressed in a future case of factual controversy, which I think is, you know, hypothetical. As our preceding discussion shows, this is not so. And I think ultimately what the government is saying, and I think what is inherent in every Declaratory Judgment Act question is, look, let's see if the other side sues you and let's see how it turns out. But the question in Declaratory Judgment Act questions is, do you have a concrete enough controversy now that a ruling on an identified question would be useful? And we do. We have a very concrete controversy on who gets to decide this question, where the venue for this accusation is. And the answer is enormously practical, because if you confirm our view that this is merely an accusation, we don't have to spend the gross national product of Botswana defending in this forum just in case. We can sit back and wait for the proper forum and use our resources for the defense of the action where it actually will be. That's a very useful thing to have. If I could say something about the merits, because I know that my time is limited. Let's give each side two more minutes, each side two more minutes. Thank you, Judge Charlie. You know, I said at the outset that in my view, there is a way to actually deal with each of the alternative channels that Congress provided, and that is to ask the Commission, where do you get the authority to be in this venue? What is the active verb in what provision of the statute that says that you get to adjudicate, to impose, or to determine, or to find, or to order a refund? And the problem the Commission has here is that there is no such language. There is a claim that we violated the anti-manipulation rule, which all it says is it shall be unlawful to do this. It doesn't say who gets to decide. And for that, they want a penalty, which textually says penalties attached to violations, which oddly enough is what goes into Section 24. Now, the Commission says, well, if you read Section 22a, b, and c, you see a reference to a hearing, and that means we get a hearing and we get to decide. They're reading the statute in the wrong order, but I think what is important to understand is that the hearing is not on the record, is not a formal hearing. It doesn't have to have any real process before you adjudicate. It's impossible that Congress would authorize the confiscation of hundreds of millions of dollars based on an exchange of briefs. And more relevantly here, you know, the test of So tell me, what is the procedure that would be followed under the statute as you interpret it? I believe that the Commission has an investigation power under Sections 14, 15, 16, et cetera. Then, if it believes that it wants to accuse us, it has a hearing like a grand jury has a hearing. You get invited to give your side of the event. It may or may not change, you know, the view of the prosecutor. And then there is an accusation. And the question in this case is, and that's where the Commission's role stops, under Section 22 and Section 20. But do they then assess penalties, or do they determine probable cause for violations? I think they expressed a proposal to assess penalties. If you read Section 22 in order, it says the Commission shall assess, subsection B, but then C, in determining the proposed assessment. And so it is textually clear from the statute that what the Commission is doing is a proposal that will then be incorporated into a complaint to be filed under Section 24. One thing that concerns me is because, I mean, I personally, not to bring the other judges into a vacuum of ignorance that I have, but I mean, I wonder about the fact that this issue has never really been dealt with head to head, and that if I accept your argument, I may be messing up things from one end to the other in FERC. Never fear. That actually is not a reason for concern, and let me explain to you why. The reason why this has actually not arisen is because the relevant statute was passed in 2005, and there has only been a single case that got to a court of appeals following a FERC proceeding. There was the Hunter case. I'm asking, were all of these matters tried in Federal District Court before 2005? No. The Commission uses the threat of an unlawful adjudication to extort latch settlement so that these cases never get to any court. And the one person who fought him, look, it has only been 12 years since the statute has been enacted, so do not be under the misunderstanding that there is a wealth of cases that you're going against. These cases haven't gotten to Federal District Court because the Commission's M.O. is to say here is our proposed assessment, $200 million. If you go to trial, our experts may find that you owe us $5 billion, and you may never see the inside of a Federal Court, which in our view will be the court of appeals, for the next five years. There is no business that can operate that way, and it seems to me that we're entitled to a declaration that that's not the way that it should be. If I could just say one final point on the reading of the statute, which I think is key to understanding why the reading is implausible, apart from the reasons that we give, keep in mind that Congress has done these penalties in other FERC statutes, and it has done it in the SEC statutes as well. The SEC would be completely unaffected by this because they have what the Commission does not have. Section 21 capital B of the Exchange Act actually gives the SEC the option of going to an adjudicated process, or they could go to section 27. The Commission can point to no language that does that. Right. And, you know, Congress allowed the SEC but not the FERC to do this. But look at what Congress did with the FERC. Section 22 is copied, 22A, 22B, 22C, is copied from the first three sentences of section 31C of the Power Act. Under the Commission's view, those three sentences inherently entitle them to adjudicate. They're copied from 31C of the Federal Power Act. The problem with this is that section 31D of the Federal Power Act does give the Commission power to adjudicate penalties, but only the accused consents. It cannot be that the same identical language in the Federal Power Act does not confer the from the FPA into the NGA confers an adjudicated process that is not mentioned. It seems to us that the correct inference is that both statutes started from the 1930s with a background rule of exclusive jurisdiction for federal court, section 317 in the Power Act, section 24 in the Natural Gas Act. Both statutes then — Mr. Estrada, bring your argument to a close. Go ahead. You can finish your sentence. Both statutes then added penalties, but only the Federal Power Act even mentions a process for actual adjudication in the agency, and only at the option of the accused. Thank you, Your Honor. Mr. Freeman, we'll hear from you now. Thank you, Your Honor. May it please the Court, I'm Mark Freeman for the Commission. I'd like to start with the ETP case and then explain why the fact that plaintiffs here have gone to the District Court for a declaratory judgment doesn't make a difference in the outcome. The ETP case was exactly the same posture as this case. It was a natural gas company accused of violating the market manipulation provisions in the Natural Gas Act, and they argued — they made exactly the argument, as the Court recounts in its opinion, that plaintiffs make here. They said, hold on, we're entitled under section 24 to have you bring that case in the District Court in the first instance. This entire proceeding is unlawful from the outset. That was the argument. And this Court said, first, nothing in the Natural Gas Act so clearly precludes the Commission's interpretation, that we can just stop this proceeding right now. And second, what this is like is the Supreme Court's decision in the Standard Oil case, where again, that was the Federal Trade Commission, there was an ongoing agency proceeding, and a party similar to the plaintiffs here filed a District Court action and said, that whole proceeding is unlawful, we want you to declare that the whole proceeding is unlawful. And what this Court said in ETP was, this is just like Standard Oil, and it can't proceed for the same reasons. And as the Supreme Court said in Standard Oil, all of these objections can be raised at the end of the day if the Commission issues an adverse order. We haven't gotten anywhere near that. And then we got to, as you said, Judge King, earlier, the final sentence of the opinion, which says … What would the final order be? I mean, you say they can go into Federal or District Court once they get a final order from you? Is that what you're saying? No. They would come to this Court, Your Honor, or to the D.C. Circuit. Okay. But I thought you said that the matter of finality is the bar to this proceeding, to this declaratory action? No. The bar to the declaratory action is that Congress has channeled all review of Commission orders to this Court or to the D.C. Circuit under Section 19b of the Act. This is just like under Elgin and other cases. And the reason why we think ETP, which was a case about direct review in this Court, is that … Well, he said there was no … He's not wanting any review. Right. He wants to litigate the case. He says that you have the authority and power to conduct proceedings and investigations and make certain determinations and have certain hearings and allow people to … And then you come out with a court and, in fact, I suppose, an indictment of some sort, and you go into Federal or District Court, and you litigate whether there's a violation or not. That is his theory. All right. And that the Natural Gas Act since 1938 has never worked that way, but he's entitled to raise that argument. Well, I mean, there are certain words like exclusive jurisdiction. That is correct, Your Honor. Exclusive means exclusive. Exclusive means exclusive, and the question is exclusive of what? And I was glad to hear … Well, it says exclusive of all violations of this Act. And, Your Honor, I was glad to hear counsel this morning raise the Manning case, that's the Merrill Lynch v. Manning case in the Supreme Court from just last term. That was a case in the Supreme Court construing the equivalent provision of the Securities and Exchange Act. It is verbatim the same. It has the same exclusive language provision. It just says there there's a carve-out, a carve-out there that makes up for or at least gives meaning or less meaning to exclusive jurisdiction than here where there is no such carve-out. No, Your Honor, I'm sorry. Respectfully, that's not correct. And what the Supreme Court said in Merrill Lynch was a couple of very helpful things. First they said, as counsel said, this provision, identical language, appears in ten different New Deal-era statutes. Ten different statutes. They're cited in the Supreme Court's opinion and in the district court opinion in this case. The court said first, we read them all very similarly. We read them to have the same meaning. And they said, what this does is create a rising under-jurisdiction in the federal courts. Now someone tried, under this very language, Your Honor, that Your Honor points to in the Exchange Act, someone tried to make the argument that plaintiffs make here. This is the Wright case, W-R-I-G-H-T, in the Second Circuit in 1940. That was a case where there was an enforcement action against an attorney for, they excluded him from participating in the securities exchange market. And he said, hey, this enforcement action has to be brought against me in district court under this language, which says exclusive jurisdiction belongs in the district court. And the Second Circuit said, no, that's not what that means. This is a direct holding of the court. It said, that's not what that language means. What that language means is it provides jurisdiction in the, as opposed to state courts. What year is that case? 1940, Your Honor. That's right. Well, no, but Your Honor, that was two years after this statute was enacted. And the Supreme Court said in Manning that. That's also a long time before 2005 when we had these other provisions, the 2005 amendments. And I'm glad you raised that because it's important to understand the ramifications of plaintiffs' argument. They say, oh, it's all different because now in 2005 is when this changed. Well, the Natural Gas Act has had Section 24 and its exclusive language provision since 1938. And since 1938, the Commission has been adjudicating violations of the Natural Gas Act, at least three instances which this court affirmed them using the word violation of the Natural Gas Act. Nobody raised this issue that we're talking about today. Under their theory, every single one of those cases had to have been brought in district court in the first instance. And I would add, as I noted before, that there are 10 different federal statutes that include the same language. And the Supreme Court said they should all be read together. Under none of them, not one, has a court, a district court or a court of appeals held that it requires the agency to bring an enforcement action in district court in the first instance. Now, is it true that all of those have these carve-out provisions? No, Your Honor. And there is no carve-out provision. What Mr. Estrada points to as a carve-out provision is Section 21 of the 21 capital B of the Exchange Act. What that provision says is the agency may assess civil penalties. The Natural Gas Act, in the addition in 2005 that Congress added in the Energy Policy Act of 2005, says exactly that. It says... But it leaves in place the fact that the federal courts have exclusive jurisdiction of all violations of this chapter. Your Honor, and what that means, as the Second Circuit held in right, and as the Second Circuit by the way held again in 1979 in the Touche Ross case that they rely on, is that the agency has its proceedings and that State courts have no role in the adjudication of such questions. But, I mean, that seems to be made up of whole courts. No, Your Honor, that's not true. Because, I mean, okay, tell me where you get, how do they extrapolate from those words exclusive jurisdiction, the interpretation that you've given? Your Honor, there are, as the Court, as the Court well knows, there are many provisions in Title 28 of the U.S. Code that provide for exclusive jurisdiction in district courts. And when Congress provides, for example, patent laws, there's exclusive jurisdiction. Certain types of land cases, exclusive jurisdiction. And when Congress provides for exclusive jurisdiction in the original jurisdiction of a district court, what it means is exclusive as of the State courts. And remember, this statute was enacted in 1938. In 1930... Tell me why it means that now. I'm sorry? Tell me why it means what you said it meant. Because, Your Honor, and the Supreme Court talked about this in the Pan-America case discussing this very provision of Section 24. The Supreme Court also talked about it in the Merrill Lynch case from last term. What that provision does is it expresses Congress's judgment during the New Deal that disputes over the meaning of these ten New Deal statutes are for Federal courts alone to decide. And remember, in 1938, there was still an amount in controversy requirement for the Federal question jurisdiction. The Supreme Court said in the Merrill Lynch case, the Court itself observed that its arising under jurisdiction at that time was confused. And so what these statutes do is say, look, we are enacting all of these new New Deal era statutes, and disputes over their meaning are for Federal courts to resolve. They are exclusive. Because normally, as Your Honor is aware, if we had a contract case and we disputed it... What I'm saying, and I'll drop it here, is that that's what you say it said. That's what you say Congress meant. Right. But you saying it doesn't make it so. But the Second Circuit saying it as to... Yeah, the Secretary said it in 1940. And again in 1979, under statutes that the Supreme Court said just last term have to be construed to have the same meaning. What about, let me ask you this, what about Congress itself in enacting the 2005 amendments and leaving the exclusive jurisdiction in there, or did we draw any kind of... I think you do draw an inference, Your Honor, but respectfully, I think you draw the opposite one. Well, I'm just saying, do we get, are we educated by the leaving these provisions that appear on the face to be contradictory? What kind of lessons do we draw from that? I think the lesson that we draw from that, Your Honor, is that Congress was very well aware of how FERC did enforcement proceedings. They had been done for 70 years before the 2005 amendments. It had been adjudicating violations of the Natural Gas Act for 70 years. And when Congress in 2005, after the Enron crisis and the Western Energy crisis and the lack of sufficient authority to deal with market manipulation, exactly the type plaintiffs are accused here, they said, all right, well, we're going to give you, FERC, additional power, civil penalty authority. If Congress thought that FERC for all of these years had been misunderstanding what Section 24 did, that would have been the time you would expect them to say so. But when Congress reenacts a statute, and this is a familiar principle, the Lorillard principle, when Congress reenacts a statute against a very long history of administrative adjudication under that statute and does not change it, we assume Congress meant to ratify that, not to disturb it. And I would note, this is a history that this Court has some familiarity with. In a 1986 case called Coastal Gas cited in our brief, the FERC adjudicated at the time – no, that's right, it was FERC at that point – adjudicated a violation of the Natural Gas Act. It was a different violation, but a violation. And they imposed a penalty of disgorgement. And this Court sustained the violation, held that FERC had appropriately issued an order and imposed a remedy, but said that the remedy wasn't proper. And what the Court said was the disgorgement went beyond just taking back the profits gained and actually took away the cost, too. And the Court said, that's effectively a civil penalty. And although you can adjudicate these violations, Congress hasn't given you civil penalty authority. That's what Congress did in 2005. It said, okay, here's the civil penalty authority that had been missing from your statute. It didn't change the way adjudications had happened. This Court in the Coastal Gas affirmed the Commission's ability to find a violation. And what it did was added an additional authority. Now, procedurally, if you accept their interpretation, would you have two hearings? I mean, would the Commission have a hearing and then you have a de novo trial before the District Court and everything that happened before the Commission doesn't count? Or is there a Chevron difference or some sort of presumption that the Commission knows what it's doing? Or is it de novo? Is there a jury? Is it before the Court? No one has any idea, Your Honor, because we would have to figure all that out because it's all made up. No one has ever construed these statutes to work that way. I think Plaintiff's Counsel in the District Court transcript was asked about this by the District Court, who said, how exactly do you think this is supposed to work? And he said, well, the Commission could have a hearing if they wanted or they could give up. It wouldn't really matter. And I think the fact that he can't point to any example of a statute that works that way is pretty telling. And I was also glad to hear— I had an impression that really what he was saying is we'd have a dress rehearsal in front of the Commission, and then we'd have the real McCoy in the District Court. Right. And there's no reason to think that that's what Congress meant. It hasn't been. Right. It has not been for 80 years under this statute. I would also add, he puts a great deal of emphasis on the Declaratory Judgment Act. And I would just— What did the 2005 amendments add to the procedure that had been followed previously under the National Gas Act? It added—so, as relevant here, it was a very large statute, but as relevant here, it added two things. First, it added the market manipulation provision that they're accused of violating, which says it shall be unlawful to use manipulative devices in these proceedings. And then, second, it added— Precisely, what did it add? Precisely, what it added was Section 22 of the Natural Gas Act, that's 717T-1. And it says—that's where it says, one, violations of—whoever violates this act shall be subject to a civil penalty. Two, the Commission assesses the civil penalty after notice and an opportunity for hearing. What was the practice before that? The practice before then, under the Natural Gas Act, was that there was no civil penalty authority. So what they did was they investigated and found violations and issued an order that included only prospective equitable remedies and disgorgement-style remedies, but they didn't have the authority, as this Court held, they didn't have the authority to issue— And review of that went to the Court of Appeals. Exclusively, that's correct. And that actually reminds me, and I'm glad you raised this, counsel questioned whether the provision for direct review in this Court is really exclusive under the Natural Gas Act. I think it's helpful to look—I mean, first, this Court has held so. That's the Atlanta gas case in the 1980s, where the Court held that a district court lacked jurisdiction to issue a declaratory judgment that a Commission proceeding was unlawful. A declaratory judgment was held unlawful and impermissible by this Court in light of Section 19b. So I think that controls plaintiff's argument here. That's the Atlanta gas case. But I also think it's helpful to look at the Supreme Court's decision cited in our brief in City of Tacoma. That's a case involving the Federal Power Act. And the question there was, was the direct review provision in the Federal Power Act, which is materially identical to the Natural Gas Act, exclusive? Did it create an exclusive avenue for review in the Court of Appeals? And the Supreme Court said, yes, the avenue for review—again, interpreting a provision materially identical to the provision here—was, quote, specific, complete, and exclusive, end quote, and that any objection to the Commission orders had to be raised, quote, in the Court of Appeals or not at all, end quote. And one thing I think is helpful about that—again, Supreme Court decision interpreting materially identical language—is that, of course, as counsel stresses, the Federal Power Act has also has language that is the verbatim identical provision, exclusive jurisdiction provision, that the Natural Gas Act has. So if he was correct that the—that language and its plain meaning means that agencies have to bring actions in the district court, then the Supreme Court was wrong in City of Tacoma in holding that there was exclusive appellate jurisdiction. Well, but again, I mean, this issue has not been raised before. It has not been raised before, but I don't think we ought to indulge the assumption that the Supreme Court didn't read the rest of the statute in City of Tacoma when it held that that was a direct review. I would also point out that— The Supreme Court used it to address issues, I guess, that have not been raised by any of the parties. Your Honor, I would just encourage the Court to look at City of Tacoma. What it said in there, it goes beyond saying— May I ask you about the constitutional issues here? Because at least one of them, the Appointments Power, has been addressed by the Tenth Circuit. That's correct. I'm counsel in those cases, and I'm familiar with them, yes. And I think that this has been joined in the D.C. Circuit as well. It's to be argued next week. It's going to be in Bankton. And—but there are other constitutional issues here involving the Seventh Amendment, because you indicated that, for the first time, they've been given the power to impose penalties— Civil penalties. —under the 2005 Act, and that would seem to implicate the Section 7—I mean, the— Seventh Amendment. Seventh Amendment. No, Your Honor, that's not right. The toll decision in the Supreme Court holds that civil penalties don't have to go to a jury. In that case, they went to a district judge. But if they don't have to go to a jury, then there's no Seventh Amendment issue. Also, more generally, under the Atlas case in the Supreme Court, if a matter can be constitutionally given to an agency—this is the so-called public rights doctrine addressed by the Supreme Court most recently in Stern v. Marshall—if a matter can be given to an administrative agency for adjudication in the first instance, then the Seventh Amendment does not impose any separate hurdle to that adjudication. What's necessary—and we agree with this—is that there has to be an opportunity for Article III review. And no one disputes in this case that all of the arguments they want to raise can be raised on direct review if the Commission actually concludes that they violated the Act and they file a proceeding for direct review in this Court. And that brings me back to the E.T.P. case. That was the holding of this Court in E.T.P., and it would be pretty— The other constitutional issue is that they're complaining about the fact that the investigators, the prosecutors, and the judges have lunch together every day. So they say, Your Honor, and what I think is interesting is, first, they don't take into account the fact that the Commission in this very case has issued an order excluding every member of the enforcement team who was involved in the investigation of plaintiffs from advising the Commission with respect to this investigation. So it's just on its face untrue, and we can provide a copy of that order if the Court wishes. But also, that's not the sort of question that we adjudicate preemptively. The way that that kind of question works is there— The argument is that we should rule in his favor because to do so would avoid those questions. And under the Roman— At the general practice of trying to avoid constitutional questions. Of course, Your Honor. But that doesn't avoid the constitutional question. You need to find, as the Court knows, under the sort of Brandeis principle of constitutional avoidance, you look for ambiguous statutory language, and then you ask whether construction that would avoid the constitutional question, that is—I've never seen that principle invoked to hold that because there might be, not yet, in a proceeding not yet held, a constitutional issue in an administrative proceeding, that as a result, we throw over the entire administrative scheme and go to district court. Because of course, due process violations, as the Court knows, can happen— You may have gotten a declaratory judgment to get that— And I'm glad you got me back to that because the Declaratory Judgment Act is not an exception to the exclusive review provisions. In Standard Oil itself, which this Court held in E.T.P. that the argument was effectively the same as Standard Oil, in Standard Oil itself, the plaintiff sought a declaratory judgment that the FTC could not proceed. And the Supreme Court was clear about that in a footnote they cite. They note that the plaintiffs were relying on Section 2201, as Mr. Estrada recited this morning. No court held that that was appropriately dismissed. Likewise, this Court's decision in Atlanta Gas involved a district court that was entertaining a request for a declaratory judgment that an ongoing commission proceeding was unlawful. And this Court said, that was appropriately dismissed because entertaining a declaratory judgment would be impermissible interference with an agency proceeding. There isn't any question that they get to have review of these issues. They're entitled to raise these issues, but they're not entitled to do it before there's been any adjudication of violation. And as the Supreme Court held in the city of Tacoma, the scheme that we're in right here is complete, specific, and exclusive. All right. I would like to ask you the same question that I asked Mr. Estrada, and that is to what extent would our ruling in his favor disrupt the way FERC operates now? I think quite significantly, Your Honor, and it would not be just FERC, because recall, as we discussed, the Supreme Court in the Merrill Lynch case last term talked about how all these provisions should be read to have the same effect, the effect of Section 24 and all 10 statutes in which they appear. In none of those statutes has the language of the equivalent provisions been held to mean that an agency must go to district court in the first instance. As we noted, the Second Circuit has twice rejected that argument, but there are lots of other agencies that would be affected, and what he's asking for is a plain language holding that that same language means that agencies have to go to district court. We are far too much water under the bridge for that conclusion, and that would disrupt administrative proceedings across the government. I would only just add that the contention that the agencies are required to proceed to district court in the first instance is also at odds with—let me back up—I think it's telling that in an argument in which they come to this Court and say, this is the obvious meaning of this statute, they don't cite a single case from any court holding so or holding that a district court may properly issue an injunction or even a declaratory judgment to stop a pending FERC proceeding. This is a statute that's been around for 80 years. It is not an accident that no one has ever done that. This would be the first case, and the Court should reject that invitation and hold as it did in ETP that the correct resolution of the meaning of the Natural Gas Act, which the Court does not need to decide if it prefers not to, should await the resolution of the administrative proceedings and a direct appeal therefrom. Mr. Freeman. Thank you. Mr. Estrada, you've saved some time for rebuttal. Thank you, Mr. Scali. Mr. Freeman is very learned and speaks very quickly, and I will try to cover as much of—I am less learned, but I speak as quickly, I hope. Let me start with ETP, which I believe the government has read with a heavily Vaseline lens. I don't have enough time to do it full justice, but just let me give you two pages from the case. Page 139 from the Court's opinion by Judge Owen, no party contends the district court has jurisdiction. Page 144 from the same opinion by this Court, we cannot say at this juncture that a hearing is plainly contrary to the statute. And of course, you know, what ETP was saying is you can't even have a hearing, which is textually contrary to Section 22, which is a hearing can be had. Our point is you have to have a hearing to propose, to accuse, not to decide my guilt on the merits. And so different issue, whether you could even have a hearing at all, have a hearing to your heart's content, and then issue your indictment and come to district court. Point two, there are, in fact, from footnote two of the Manning case, ten of these statutes. Mr. Freeman is slightly incorrect that they all rise or fall together. Only four of those have exclusive jurisdiction language. The rest of the language is similar, but it has no exclusivity. And those are the Security Exchange Act, the Federal Power Act, which is one of their statutes, the Natural Gas Act, and the very well-known Connolly Hot Oil Act, which I'm sure comes up every day in courts of the United States. And this is not an issue for the following reason. The SEC has its own statute that authorizes in-house adjudication in cases like this. The Federal Power Act, 31D, authorizes it in certain context, as I pointed out earlier. And so the irony of this case is that they have an explicit authorization for adjudication of penalties in a section that Congress didn't lift into this statute. They lifted 31C, but not 31D. It would be incongruous to say that in lifting 31C and putting it in this statute, Congress also put in the separate language that they put in in 31D in the Federal Power Act. But, you know, regardless, it's not an issue because that statute had its own provision for adjudication. And then this statute, which has the exclusive jurisdiction language and the well-known Connolly Hot Oil Act. Now, the question here is not whether this is going to open the floodgates to every case being in federal district court. I would like you to remember nothing if not this. All I'm saying is they have to point out to where in the statute they get to impose, determine, find, order, et cetera. And he was here for almost 30 minutes and did not point to any language in Section 4A or in Section 22 that allows them to impose, adjudicate, determine, find, et cetera. What's the purpose of Section 19, then, that says that you have a right to appeal to the appellate court? It seems to me that it's saying you have a right to appeal to the circuit court the decision of the commission. But if we accept your interpretation, then there's no need for that Section 19. Is that right? No. I'm saying something slightly different, Judge Prado. I am saying that contrary to their view, I recognize that since 1938, this statute has had two separate sections, each of which purport to confer exclusive jurisdiction on a federal court. And the task here is to decide whether this case goes in one exclusive basket or the other exclusive basket. What I propose to you before you decide that something goes into Section 19 basket is look at whether authority to take the action in the first instance as the decision maker comes. Most of the federal, most of the National Gas Act gives them authority to find, determine, et cetera. And those cases, when they exercise that authority, would go to the Court of Appeals. What's missing here is anything in Section 4A or Section 22 like find, determine, or impose. And if I could sort of make very important this point, because there were two examples that he gave. One of them had to do with the 21 capital B, the Exchange Act provision that authorizes in-house adjudication. And I would, he said it was basically like this statute. I would like to read it to you. What the SEC can do is, and I'm quoting, impose a civil penalty if it finds, you know, the record, very different from what we have here. There is an express requirement of an express, of an on-the-record formal hearing like the FBA has. Section 19, that was an issue in Wright, it says, which is no longer in the statute, by the way, the SEC may by order suspend any member that it finds has violated the provisions. And so I am not saying that everything is going to go to federal district court. I am simply saying if you have no language from Congress telling you that you get to adjudicate in a case in which the Constitution otherwise would ordinarily require a jury and an Article III court, and where Congress did not give a reason as to why it might want to take these cases out of the district courts as the Supreme Court said it should in the sheriff case, there is no basis for them to act in a way that has never been authorized by the Congress. I am out of time. I have other things to say, but you have already been very indulgent with us. I thank you very much. Thank you.